WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Linda L. McKinzie,<br><br>    Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Commissioner of the Social Security Administration,<br><br>    Defendant. | No. CV-12-00587-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff's appeal from the Administrative Law Judge's ("ALJ") denial of Plaintiff's Title XVI application for supplemental security income based on disability.

**I.    PROCEDURAL BACKGROUND**

Plaintiff Linda McKinzie previously applied for Supplemental Security Income under Title XVI of the Social Security Act on May 28, 2004. An unfavorable decision was ultimately issued by an ALJ on September 18, 2006 (Record Transcript ("TR") 68-78). Plaintiff appealed this decision to the Appeals Council and review was denied. (TR 76).

On August 11, 2008, Plaintiff filed another application for Supplemental Security Income under Title XVI of the Social Security Act, alleging that her disability began August 1, 2008. (TR 18). Plaintiff was 51 years old on August 11, 2008 and listed her illnesses, injuries, and conditions on her application as neuropathy, nerve damage, carpal

1  tunnel, and hearing loss. (TR 158). Plaintiff's applications were initially denied. (TR 18).
2  On reconsideration, a hearing was held on October 19, 2009 before an ALJ, who issued
3  an unfavorable decision on December 22, 2010. (TR 18-27). On January 26, 2012, the
4  Appeals Council denied review of the ALJ's unfavorable decision on Plaintiff's claim.
5  (TR 1-3). As a result, the ALJ's decision of December 20, 2010 became the final decision
6  of the Commissioner of Social Security in Plaintiff's case. (*Id.*).

7  On March 20, 2012, Plaintiff filed her Complaint for Judicial Review of the
8  Administrative Determination of her claim with this Court. (Doc. 1).

9  **II.    LEGAL STANDARD**

10 The Commissioner's decision to deny benefits will be overturned "only if it is not
11 supported by substantial evidence or is based on legal error." *Magallanes v. Bowen*, 881
12 F.2d 747, 750 (9th Cir. 1989) (internal quotation omitted).  Substantial evidence is more
13 than a mere scintilla, but less than a preponderance. *Reddick v. Charter*, 157 F.3d 715,
14 720 (9th Cir. 1998).  It is such relevant evidence as a reasonable mind might accept as
15 adequate to support a conclusion. *Id.*

16 In determining whether there is substantial evidence to support a decision, this
17 Court considers the record as a whole, weighing both the evidence that supports the
18 administrative law judge's conclusions and the evidence that detracts from the
19 administrative law judge's conclusions. *Id.* If there is sufficient evidence to support the
20 Commissioner's determination, the Court cannot substitute its own determination. *Id.*
21 Additionally, the administrative law judge is responsible for resolving conflicts in
22 medical testimony, determining credibility, and resolving ambiguities. *See Andrews v.*
23 *Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  Thus, if on the whole record before this
24 Court, substantial evidence supports the Commissioner's decision, this Court must affirm
25 it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. §
26 405(g).

### A. Definition of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show, among other things, that he is "under a disability." 42 U.S.C. § 423(a)(1)(E). The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* at § 423(d)(1)(A). A person is "under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at § 423(d)(2)(A).

### B. Five-Step Evaluation Process

The Social Security regulations set forth a five-step sequential process for evaluating disability claims. 20 C.F.R. § 416.920; *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir.1998) (describing the sequential process). A finding of "not disabled" at any step in the sequential process will end the ALJ's inquiry. 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the ALJ at the final step. *Reddick*, 157 F.3d at 721.

The five steps are as follows:

1. First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). If so, the claimant is not disabled.

2. If the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* at § 416.920(c). Basic work activities means the "abilities and aptitudes to do most jobs." *Id.* at § 416.921(b). Further, the impairment must either be expected "to result in death" or "to

last for a continuous period of twelve months." *Id.* at § 416.909 (incorporated by reference in 20 C.F.R. § 416.920(a)(4)(ii)). The "step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

3. Having found a severe impairment, the ALJ next determines whether the impairment "meets or equals" one of the impairments specifically listed in the regulations. *Id.* at § 416.920(a)(4)(iii). If so, the claimant is found disabled without considering the claimant's age, education, and work experience. *Id.* at § 416.920(d).

4. At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work." *Id.* at § 416.920(a)(4)(iv). To make this determination, the ALJ compares its "residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* at § 416.920(f). If the claimant can still perform the kind of work the claimant previously did, the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

5. At the final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. *Id.* at § 416.920(a)(4)(v). In making this determination, the ALJ considers the claimant's residual functional capacity, together with vocational factors (age, education, and work experience). *Id.* at § 416.920(g)(1). If the claimant can make an adjustment to other work, then he is not disabled. If the claimant cannot perform other work, he will be found disabled. As previously noted, the ALJ has the burden of proving the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

**III.   ANALYSIS**

With regard to steps 1–5, in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since August 11, 2008, (2) had the following impairments which are severe when considered in combination: diabetes mellitus, diabetic peripheral neuropathy affecting her lower extremities, status-post bilateral carpal

- 4 -

tunnel releases, gastroensophageal reflux disease (GERD), asthma, hypertension, fatigue, and a cognitive disorder NOS with memory problems, (3) did not have an impairment or combination of impairments specifically listed in the regulations, (4) was unable to perform any of her past relevant work, but had the ability to perform light work with restrictions that she may not crawl, crouch, climb, squat, kneel, use her lower extremities for pushing or pulling, should not be exposed to temperature extremes, humidity, dust, gases, or fumes, and must be permitted to alternate between sitting and standing at will, and (5) "there are jobs that exist in significant numbers in the national economy that the claimant could perform." (TR 21-27). As a result, the ALJ found that Plaintiff was not disabled as defined in the Social Security Act.

Plaintiff argues that the Court should vacate the ALJ's decision because: (1) the ALJ erred by rejecting the assessment of Plaintiff's treating physician, Matthew Duke, D.O., and relying on the opinion of an examining physician, Akkaraju Rakesh Sarma, M.D.; (2) the ALJ erred by rejecting Plaintiff's symptom testimony; (3) the ALJ erred by determining Plaintiff's work capacities based on a standardized assessment, with no basis in the record, which was at odds with the finding that Plaintiff could perform jobs at the light exertional level. (Doc. 18). Further, Plaintiff argues that, if Dr. Duke's opinion and Plaintiff's testimony are properly considered, the Court should remand Plaintiff's claim for determination of disability. (*Id.*)

### A. Whether the ALJ Erred in not Giving Significant Weight to Dr. Duke's Opinion

Plaintiff argues that the ALJ improperly rejected the assessment of Dr. Duke, Plaintiff's treating physician. (Doc. 18 at 13). Plaintiff cites *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2009) to argue that in order to reject a treating physician's opinion, the ALJ must set forward specific and legitimate reasons that are supported by substantial evidence in the record as a whole. (Doc. 18). Plaintiff argues that, in this case, there is no substantial evidence that contradicts the treating physician's opinions. (Doc. 27 at 9).

The Social Security Administration has established that a treating physician's opinion will only be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques *and* is not inconsistent with the other substantial evidence." 20 C.F.R. § 416.927(c)(2) (emphasis added); *Orn*, 495 F.3d at 631; *see also* SSR 96-2p, 1996 WL 374188, at *1 (July 2, 1996). To determine whether a medical opinion is well-supported "is a judgment that adjudicators must make based on the extent to which the opinion is supported by medically acceptable clinical and laboratory techniques."[1] SSR 96-2p, 1996 WL 374188 at *2. The ALJ is not required to accept medical opinions that are conclusory and unsubstantiated by medical documentation. *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995). Even if a treating physician's medical opinion is not well supported, the opinion should not be entirely rejected, but instead it is not entitled to "controlling weight." SSR 96-2p, 1996 WL 374188 at *4. When a treating physician's opinion is not well-supported and, as a result, is not given controlling weight, the ALJ applies several other factors to determine the weight given to the treating physician's opinion. These factors include: the length and the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the evidence presented to support the physician's opinion, and whether the physician's opinion is related to his or her specialty. 20 C.F.R. §§ 416.927(c)(2)(i), (c)(2)(ii), (c)(3)–(c)(6).

In this case, the ALJ did "not give significant weight to Dr. Duke's opinions" because: (1) his opinions were not supported by "contemporaneous examinations and objective medical findings," and (2) his opinions are contradicted by that of Dr. Sarma and the State agency medical consultant. (TR 25).

---

[1] Examples of laboratory diagnostic techniques are given in 20 C.F.R. § 404.1528 and include, "chemical test, electrophysiological studies (electrocardiogram, electroencephalogram, etc.), roentgenological studies (X-rays) and psychological tests." 20 C.F.R. § 404.1528.

### 1. Whether the Treating Physician's Opinion Was Supported By Objective Medical Evidence.

The ALJ determined that Dr. Duke's opinions did not need to be given controlling weight because they were not "well-supported." The ALJ found that Dr. Duke's opinions were not supported by "contemporaneous examinations and objective medical findings." (TR 25). The majority of Dr. Duke's records consist of several questionnaires wherein Dr. Duke expressed his medical assessment of Plaintiff by checking boxes and answering brief questions. (TR 258-64, 411-15). Conclusory opinions "in the form of a check-list" lack "substantive medical findings" and, as a result, do not provide objective medical evidence to support the treating physician's conclusion. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (finding the ALJ properly gave minimal weight to treating physician's opinion partly because it was unsupported by objective medical evidence). The remainder of Dr. Duke's records consists of copies of Dr. Duke's medical notes taken during Plaintiff's office visits. These records do not support Dr. Duke's opinions as indicated in the questionnaires in the record.[2] As a result, there was substantial evidence to support the ALJ's determination that Dr. Duke's opinion was not supported by objective medical evidence.

Plaintiff argues that the ALJ erred by determining that Dr. Duke's assessment was not supported by objective medical evidence because (1) the ALJ substituted his own medical opinion for the treating physician's opinion and, (2) objective medical evidence is only required to show the existence of an impairment that could cause a claimant's symptoms, but not the severity of the symptoms themselves. (Doc. 18 at 14-15).

---

[2] *See* TR 347-48 (6/5/06, "paperwork, consult. . . she's basically a litany of complaints, wants a letter for disability typed up as well"); TR 288-90 (6/5/08, "DM [Diabetes Mellitus] check"); TR 246-48 (8/19/08, "cold/nonproductive cough"); TR 282-84 (8/19/08, "cold/nonproductive cough"); TR 279-81 (8/22/08, "med/referral"); TR 277-78 (9/26/08, "fill out paperwork. . . she is managed by Dr. Chandrigiri for [neuropathy] issues"); TR 274-76 (10/6/08, "med refill"); TR 416-18 (1/14/10, "ear infection").

Plaintiff claims the ALJ substituted his own medical opinion for the treating physician's opinion. However, Plaintiff provides no support for her argument that the ALJ performed an "independent analysis of the medical record to overrule the treating physician's assessments." (Doc. 18 at 15). Further, the ALJ did explain that his decision was based on both Dr. Sarma's opinion and Plaintiff's own complaints of pain by stating "[Dr. Sarma's] opinion is entitled to significant probative weight" and "this finding takes into consideration [Plaintiff's] complaints of lower extremity pain, difficulty standing or sitting for long periods, and her asthma." (TR 25). Contrary to Plaintiff's argument, the ALJ's determination has significant basis and substantial support in the record and, as a result, the ALJ did not substitute his own medical opinion for the treating physician's opinion.

Plaintiff next claims that the ALJ erred by requiring "objective medical evidence" in determining the severity of Plaintiff's symptoms. (Doc. 18 at 15). The ALJ stated in his opinion that he did "not give significant weight to Dr. Duke's opinions because they are not supported by contemporaneous examinations and objective medical findings." (TR 25). As explained above, "controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques." SSR 96-2p, 1996 WL 374188, *1 (July 2, 1996); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1138 (9th Cir. 2009) ("the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical finding"). As a result, the ALJ did not err by requiring objective medical evidence to support the treating physician's claims.

As a result, the Court finds that there is substantial evidence in the record to support the ALJ's determination that Dr. Duke's opinion was not well-supported by objective medical evidence.

### 2. Whether the Treating Physician's Opinion was Contradicted by the Examining Physician and the State Agency Medical Consultant.

The ALJ also determined Dr. Duke's opinions were not entitled to controlling weight because his opinions were contradicted by that of Dr. Sarma and the State agency medical consultant. (TR 25). This determination is consistent with the factors listed in 20 C.F.R. § 416.927 for determining the weight given to a treating physician's opinion after the ALJ determines that the treating physician's opinion is not well-supported by objective medical evidence.

Plaintiff argues that Dr. Sarma's one-time evaluation "failed agency requirements" because he did not review any of Plaintiff's previous medical records before his examination. Plaintiff further argues that, even if Dr. Sarma's evaluation was not "flawed," it cannot constitute substantial evidence to contradict Dr. Duke's opinions. (Doc. 18 at 13; Doc. 27 at 7-8).

Plaintiff cites 20 C.F.R. § 416.917 to support her first argument that Dr. Sarma's opinion was "fatally flawed" because Dr. Sarma did not review any background medical records. (Doc. 18 at 8 n.10). The relevant language in 20 C.F.R. § 416.917 states, "We will also give the examiner any necessary background information about your condition." This language does not indicate that the report of an examining physician, who is not provided with all of a claimant's medical records, is "fatally flawed." Further, 20 C.F.R. § 416.927(c)(6) lists "the extent to which an acceptable medical source is familiar with the other information in your case record" as a relevant factor for the ALJ to consider when determining the weight to be given to a physician's opinion. In this case, Dr. Sarma's report indicates at the time of the examination he was not provided Plaintiff's medical records. (TR 310). However, Dr. Sarma's report, under the heading "History of Present Illnesses," discusses a summary of Plaintiff's medical history. (*Id.*) As a result, it appears that Dr. Sarma was informed of Plaintiff's medical history at the time of the

- 9 -

examination.

The ALJ considered Dr. Sarma's "extensive, well-documented examination" to determine Dr. Sarma's opinion was entitled to "significant probative weight." (TR 25). Dr. Sarma's opinion was not "fatally flawed" and there is substantial evidence to support the ALJ's decision to give Dr. Sarma's opinion significant weight.

Plaintiff cites *Orn*, 495 F.3d at 633, to argue that, even if Dr. Sarma's opinion is not "fatally flawed," it cannot constitute substantial evidence and, as a result, cannot contradict Dr. Duke's opinions as a treating physician. (Doc. 18 at 16). However, in contrast to the present case where the ALJ determined Dr. Duke's opinions were not well-supported, the court in *Orn* determined the treating physicians' opinions were well-supported. 495 F.3d at 634. As a result, the primary issue in *Orn* centered on the second factor of whether or not the treating physician's opinion was "not inconsistent with the other substantial evidence." 20 C.F.R. § 416.927(c)(2). Further, in *Orn*, the ALJ entirely rejected the treating physicians' opinions. 495 F.3d at 630. Here, the ALJ "[did] not give significant weight to Dr. Duke's opinions," but did not completely reject or disregard Dr. Duke's testimony. (TR 25). Although given less weight, the record indicates that Dr. Duke's opinion was still considered in determining Plaintiff's disability claim. (TR 82)

Plaintiff finally argues that the opinion of the state agency medical consultant, as a nonexamining physician, cannot "constitute substantial evidence to support denial of disability benefits." (Doc. 18 at 12). However, "nonexamining physicians' assessments may properly support a decision when other independent evidence supports those assessments." *Morgan v. Apfel*, 169 F.3d 595, 600 (9th Cir. 1999). In this case, the state agency medical consultant's opinion combined with the inadequacy of objective medical evidence presented in the record to support Dr. Duke's opinion, Dr. Sarma's conflicting opinion, and Plaintiff's daily activities, are substantial evidence that supports the ALJ's determination.

**B.     Whether the ALJ Properly Rejected Plaintiff's Subjective Complaints**

Plaintiff argues that the ALJ failed to provide clear and convincing reasons supported by substantial evidence in the Record for rejecting Plaintiff's subjective symptom testimony. (Doc. 18 at 12). Plaintiff specifically argues that the ALJ did not make specific findings to support his determination that Plaintiff's symptom testimony was not fully credible.

Once a claimant produces medical evidence of an underlying impairment, which is reasonably likely to be the cause of some pain, the ALJ 'may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.'" *Orteza v. Shalala*, 50 F.3d 748, 749–750 (9th Cir. 1995) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 346–47 (9th Cir. 1991) (en banc). In this case, there is no question that the ALJ found that there was medical evidence of underlying impairments that would be reasonably likely to cause pain. *See* TR 25 ("After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause only some of the alleged symptoms. The claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.").

The question then is whether the ALJ discredited Claimant's testimony of pain solely because such pain was not supported by objective medical evidence. "Although an ALJ 'cannot be required to believe every allegation of disabling pain,' the ALJ cannot reject testimony of pain without making findings sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza*, 50 F.3d at 750 (quoting *Bunnell*, 947 F.2d at 345–46; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Factors that the adjudicator should consider when making such credibility determinations include the nature, location, onset, duration,

frequency, radiation, and intensity of any pain, precipitating and aggravating factors (e.g., movement, activity, environmental conditions), type, dosage, effectiveness, and adverse side-effects of any pain medication, treatment, other than medication, for relief of pain, functional restrictions, and the claimant's daily activities. *Bunnell*, 947 F.2d at 346 (citing SSR 88–13, 1988 WL 236011 (July 20, 1988)).

"[I]f the claimant engages in numerous daily activities involving skills that could be transferred to the workplace, an adjudicator may discredit the claimant's allegations upon making specific findings relating to the claimant's daily activities." *Id.* (citing *Fair*, 885 F.2d at 603). "Another relevant factor may be 'unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment.'" *Id.* (internal citation omitted). "An adjudicator may also use 'ordinary techniques of credibility evaluation' to test a claimant's credibility." *Id.* (internal citation omitted). "So long as the adjudicator makes specific findings that are supported by the record, the adjudicator may discredit the claimant's allegations based on inconsistencies in the testimony or on relevant character evidence." *Id.*

In this case, the ALJ made specific findings to support his determination that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her conditions were not fully credible and did not prevent her from performing light work with certain limitations. The ALJ made specific findings that the objective medical evidence did not support the extent of Plaintiff's complaints (TR 24–25), and also considered the factors required by SSR 88–13 in making the credibility determination.

Namely, the ALJ took into account Plaintiff's daily activities of driving, shopping, cooking, performing housework, and caring for her pets. (TR 22) (citing TR 166-170, 265-273). In his decision, the ALJ cites to a questionnaire completed by Plaintiff where she indicates she lives alone and is able to carry groceries such as a gallon of milk and a five pound bag of sugar. (TR 166). The ALJ also cites to a psychological evaluation of Plaintiff conducted by Dr. Shannon Tromp, Ph.D. (TR 265-273). In this evaluation,

Plaintiff stated she is able to go outside and walk around and visit with her neighbors, has several cats she plays with, does her own shopping and prepares her own meals, tracks her own bills, medications and appointments, and is able to drive without getting lost. (TR 267-268).

This evidence supports the ALJ's determinations regarding claimant's credibility. *See Fair*, 885 F.2d at 603 ("More realistically, if, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working"). Accordingly, the ALJ did make sufficiently specific findings to support his decision that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not fully credible.

### C. Whether the ALJ's Determination of Plaintiff's RFC is Supported by the Record.

Plaintiff argues that the ALJ's determination of Plaintiff's RFC has no basis in the record and the ALJ failed to consider Plaintiff's "individual limitations" in determining the RFC. (Doc. 18 at 21). Second, Plaintiff argues that the ALJ's determination of her RFC is inconsistent with Plaintiff's stated capacities. (*Id.*)

In determining a claimant's RFC, the ALJ considers "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSRs 96-4p and 96-7p." (TR 23). In considering the Plaintiff's symptoms, the ALJ first determines whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the Plaintiff's symptoms. (*Id.*). If the ALJ finds there is such an impairment, the ALJ then "evaluates the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning." (*Id.*). The credibility of any statements

which are not supported by objective medical evidence is evaluated by the ALJ upon consideration of the entire record. (*Id.*).

Plaintiff first argues that the ALJ's determination of Plaintiff's RFC has no basis in the record and the ALJ "provided his own assessment" of Plaintiff's capacities in determining the RFC. (Doc. 18 at 20-21). However, in determining Plaintiff's RFC, the ALJ explicitly stated he considered Plaintiff's own allegations of pain and her own claimed limitations along with Dr. Sarma's opinion:

> Dr. Sarma's opinion was that the claimant could be expected to lift and carry about 50 pounds occasionally and 25 pounds frequently, stand and walk about 6 hours in an 8 hour day workday and sit without any restrictions. He found no postural limitations, and stated that the claimant could frequently reach, handle, feel, grasp, and finger. This opinion is entitled to significant probative weight given Dr. Sarma's medical specialty and extensive, well-documented examination. However, giving the claimant the benefit of the doubt, the undersigned will find that she has the residual functional capacity [RFC] to perform light work with the additional nonexertional limitations described above. This Finding takes into consideration her complaints of lower extremity pain, difficulty standing or sitting for long periods, and her asthma.

(TR 25). Further, the ALJ's decision includes a brief analysis of each of the medical opinions presented in Plaintiff's record. (TR 23-25). As a result, the ALJ's determination of the Plaintiff's RFC is supported by substantial evidence in the record.

Plaintiff also argues that the ALJ's determination of her RFC is inconsistent with Plaintiff's stated capacities. (Doc. 18). Plaintiff argues that the determination that Plaintiff can "perform light work with a sit/stand option at will" is inconsistent with a finding that she can perform light work. However, the hypothetical the ALJ specifically gave the Vocational Expert ("VE") at the hearing included a sit/stand option. (TR 60). The VE stated that with a sit/stand option there were "a hundred and ten thousand [jobs] in the United States" for someone with Plaintiff's RFC. (*Id.*). As a result, Plaintiff's

- 14 -

argument that the ALJ's determination is inconsistent with Plaintiff's capacities is not supported by the record. The ALJ's determination of Plaintiff's RFC is supported by substantial evidence in the record.

## IV.   CONCLUSION

Accordingly, the ALJ did not err in finding that Plaintiff was not disabled within the meaning the Social Security Act. Because this Court affirms the ALJ's decision, Plaintiff's request that the Court exercise its discretion and remand this matter for determination of disability benefits is denied as moot.

Based on the foregoing,

**IT IS ORDERED** that the decision of the Administrative Law Judge is **AFFIRMED.**

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly. The judgment will serve as the mandate of this Court.

Dated this 16th day of August, 2013.

James A. Teilborg
Senior United States District Judge